Before we proceed, I just want to let everyone know that Justice Litton is not feeling well today. He is not with us, but he is participating fully in the case. Of course, he has had the briefs and has prepared, and he will also be listening to the argument today and will participate in the decision. Mr. Abbott? In this case, I represent the defendant, Dr. William Hankins. He was the seller in a vacant land sales contract in which he agreed to sell some the plaintiff, Mr. William Short. I believe the contract was signed in October of 2011. Prior to that, Dr. Hankins had entered into a for Maloof Realty. His name was Mr. Leaser. The contract was signed, I believe, in October. At some point thereafter, I believe it was around mid-November, November 14th of that year, Mr. Leaser, Mr. Short's real estate agent, contacted Mr. Eady and stated that they wanted to request an extension of the He had faxed an extension agreement to Dr. Hankins at that time in mid-November. No evidence of that fax was ever produced at trial. There was perhaps some misunderstanding on the part of Mr. Eady on whether my client, Dr. Hankins, ever actually agreed to extend the closing date. My client disputed ever having agreed to that and after, both at trial and I believe during some depositions, Mr. Eady basically stated that he couldn't recall ever actually speaking to my client over the phone or in person concerning the extension request. The extension request was put in writing in mid-November, I believe, and that was signed, an agreement that on December 13th of that year, Mr. Eady did fax that agreement to my client, Dr. Hankins. Dr. Hankins stated that that's the first time he had ever seen that agreement to extend the Soon after the time the extension was faxed to Dr. Hankins on December 13th of that year, either that day or very soon thereafter, Mr. Eady contacted Dr. Hankins and at that time they had an exchange of words and Dr. Hankins informed him that he had already in writing said that he had considered the contract null and void due to the original closing not occurring on December 2nd. In the record there is a letter drafted by my client's son, signed by my client dated December 8th of that year and basically it says a lot of things but it does say that due to the closing date being missed on December 2nd that they were considering the contract null and void. I don't believe there was testimony that that letter was sent to Mr. Eady at the Maloof offices. In any case, at around that same time, perhaps the same day or I want to say December 15th of that year, Mr. Eady went to the Maloof offices, retrieved the letter, read it, and informed Mr. Leeser of the letter and Mr. Leeser informed Mr. Short that very same day also, December 15th, that Dr. Hankins considered the contract null and void for failing to close on the original closing date. Dr. Hankins in the court below did file an affirmative defense based on the statute of frauds in that Dr. Hankins had never signed a written extension and as this contract deals with real estate, any modifications under the cases I have cited would also have to be in writing to be enforceable. There was a two day trial and after the trial the court ended up saying that, well there was an argument that the closing date had been waived by my client. And the court ended up finding that Dr. Hankins had not waived the original closing date, had not orally agreed to extend it, nor had he waived it. However, the court below relied on the case of OmniPartners v. Down, which is cited in I think all the briefs, and basically found that, made several findings. Number one, in addition that my client had not waived the original closing date, nor orally agreed to do so, that based on Mr. Eady's communications with Mr. Leeser concerning the closing date, that Mr. Short was entitled to rely on what Mr. Eady had communicated to him to the effect that Dr. Hankins had agreed to extend the closing date. And therefore, I think the court also found that under OmniPartners that specific performance of the contract was justified based mainly on that case. I think that case is probably the closest of any Illinois case we have to the situation here. However, it's my contention that the court relying on OmniPartners v. Down is broadly overapplying the actual ruling in that case. In that case, there was plenty of evidence that the seller had acquiesced to an extension of the closing date. There were communications both before and after the closing date specified in that case, which I believe was March 1st of 1989, that would lead the buyer to understand that the original closing date had been waived. Most importantly, I think, in terms of evidence that the seller in that case had waived the closing date, which again was supposed to be on March 1st, was a letter that the seller authorized to be sent to the buyer basically stating, well, I will still agree to close, but now I want $40,000 more. So I believe OmniPartners is distinguishable in that there is clear evidence of waiver, not just that letter that was sent in May of 1989 concerning the extra money they wanted, but a series of communications between the parties, which more than a lot would allow finding that the original closing date in that case had been waived. The court went in OmniPartners basically after finding that the seller had waived the closing date, went, I think, to some equitable principles which apply in the case of specific performance, and, quote, looked at his, the seller's, or her, I believe, overall conduct in the case to find that specific performance was justifiable, specifically stating that the seller's conduct in refusing to set a new closing date in that case after the original had passed, despite the waiver, was motivated by that seller's desire to seek more money because she thought she could get more money from perhaps a third party. So the OmniPartners court felt under that circumstance that specific performance was justified for all of those reasons, the overall conduct, the clear waiver of the original closing date, and the equitable principles involved in that case. Now specific performance can be awarded in a contract only if the person seeking it has either performed this part of the contract or was prevented from doing so by the conduct of the other party. Clearly, in the OmniPartners case, there was enough conduct on the seller's part in that case to the acquiescence of the original closing date being missed and the other conduct there to lead the buyer to believe certainly that, you know... Notifying the purchaser that they were in breach and this is what they could do to cure it really stopped the purchaser from being able to go ahead and get this closed because he didn't tell them this isn't going to happen. As I think it was paragraph 13 requires that if he didn't consider the contract, the closing date extended, they had to give him notice of the breach. So this purchaser thinks this contract is a go, he doesn't get this notice, continues to operate under that theory, and then the seller says no. In that respect, I think what Judge Dubicki's order is saying is that that's one of the similarities to OmniPartners and one of the things that he relied on and that it was reasonable since he didn't get that notice of breach for him to think, well, then the date was extending the deadline or extending the closing date was acceptable to your client. Correct, and I think that's what Judge Dubicki was finding. I think he was in error, however, in terms of what would be required to award specific performance under the circumstances where there was a waiver. I mean, the court found that my client did not waive the closing date. In OmniPartners, they definitely found that there was a waiver. In this case, we have a real estate agent, Mr. Eady, who was purportedly representing Dr. Hankins, who, as I argue, was most likely operating under the assumption that my client would have a waiver. My client agreed to extend the closing date, and the communications from Mr. Eady to Mr. Leeser, I think if you look at the evidence, kind of show, and I believe at one point, Mr. Eady even admits he was operating under the assumption that there would be an agreement. Was your client prepared and was probably ready for closure on December 2nd? Presumably. It's a vacant land. Was it that there were some barrels or something that were not removed? Counsel has two minutes. If I could finish my thought on the ability for Mr. Short to rely on what Mr. Eady said. I think, again, as I stated, Mr. Eady was operating under the assumption. There's no evidence that Dr. Hankins, the court did find that Dr. Hankins knew, and I think he could have been justified in finding this based on some messages that might have been left by Mr. Eady regarding the desire for an extension messages left with my client. The court found that my client knew that Mr. Short desired an extension. That's a lot different than my client knowing that his agent had agreed to it for him and my client acquiescing in that behavior by his agent. I don't think Mr. Short can rely on what Mr. Hankins was saying, but the ultimate authority on whether the agent can agree to something for Mr. Hankins is there has to be either acquiescence by my client in that behavior by his agent, or an express agreement communicated to the agent or third parties. There's no evidence here whatsoever that my client acquiesced in Mr. Eady communicating to Mr. Leeser that the extension was okay with him. If we allow an agent to agree to something as important as a closing date for a seller in the case, it essentially allows the seller, Mr. Short, to communicate a desire to change the contract. If no response is made, then he gets the modification by default. There has to be some affirmative contact by the seller in this case that he can rely on, which would justify him in believing that there was an agreement for an extension. You said the seller? I'm sorry. Is Short the seller? No, he's the buyer. I'm sorry. I think why I should have said seller. Okay. Okay. Thank you. Thank you, Mr. Eady. Mr. Umlund? I think first we have to realize that this is an award of specific performance, which is an equitable remedy. The trial court has to be found to have abused its discretion in order to overturn that. The second thing I think that is important is there were two findings that are unchallenged by the appellant, and that is that the defendant was aware prior to the December 2nd closing date that plaintiff Short desired an extension of that closing date. The second finding is that the defendant did not, until December 15th, notify anyone that the December 2nd date was important to him. It appears from the evidence, the email that went from the seller's broker to the buyer's broker, that on November 14th, in fact, the defendant was informed about the desire for a change and in fact told Mr. Eady that it was okay. And that's Trial Exhibit 17, the second email string down, which says from Mr. Eady to Mr. Leiser, I talked to my seller and he's fine with that, meaning the continuation. Please let me know who the lender is, as I am ordering title work from the O'Haver Law. So based on those facts, the trial court found under Omni that there are other circumstances that support an award of specific performance. And to voice a principle for other circumstances, that would fit into the principle of equitable estoppel by silence. And I cited the Windcrest case, which says estoppel may result from silence as well as words. It is the duty of a person having a right and seeing another about to commit an act infringing upon it to assert his right. So from November 14th to December 2nd, the defendant knew that the closing was not going to occur on December 2nd. He did nothing to say that's not okay with me. The case law says that he has to assert his right to get there. Now the trial court said that the plaintiff's... Is there a question here? It seems to be a little conflict between Hankins and Eady or Eddy in this thing, right? On their oral testimony there is, but on the written documents there isn't. The written documents show a clear trail. The Eady can't remember anything at the time of trial and neither can Hankins. And at one time one says something and then they contradict it. But what is clear is in trial exhibit 17, there's documentation of a communication that went on between Eady and Hankins about the request for a continuance. After December 2nd when the son writes this letter purportedly withdrawing themselves from the contract, they reference an oral agreement. What other agreement could it be but the one to continue the closing date? Now setting aside all the confusing testimony and the lack of memories, those two things are bedrock in terms of what actually happened. Now what's the former? The documentation of the former? Eady's representation that it's okay? Trial exhibit 17 says, and if you read the chain, I talked to my client, or I talked to my seller, and he's fine with that. That meaning the request for a continuation. Right. Right. Then he does nothing. He does nothing. There's no dispute. That's assuming the truth of the matter is asserted by Eady, isn't it? See, I tendered that exhibit as an admission by a party's agent. Right. And I think it quite clearly is. If you look at the prongs that you need for the foundation on that, it's quite clear that it is an admission by a party agent. But let's get away from the agreement, because that's not as important as the two findings that are on challenge support a waiver, even though the trial court found that there wasn't one. And the case of Hahn v. A.G. Becker, 164 Illap III, 660 at page 670, and I quote, when a party intentionally relinquishes a known right, either expressly, as by objection, or by conduct such as silence, inconsistent with an intent to enforce that right, waiver may be inferred. The Hahn case cites several other cases, all dealing with arbitrations, I believe, up in Cook County, where some objection came up during the middle of the arbitration, and rather than raising the objection then and there, the parties wait for a ruling on the arbitration, decide they don't like the ruling, and then try and say, well, wait a second, there was a clear conflict back here. The arbitrator talked to the other party. All those cases hold that no, that amounts to a waiver, which is clearly what the unchallenged findings by the trial court in our case did here. It established clearly that there was a waiver in light of the knowledge of the desire to move to closing. So the equitable circumstances support the award of specific performance. The court noted the notice provisions of the contract. Those are quite complicated with the language and how that works, but I think the argument is clear that if Hankins did believe that there was a breach, he did have a duty to send out notice and give an opportunity to cure it, which he didn't, and therefore, as an additional support for the court's award, you can rely on that. The ready, willing, and able argument. I think I've demonstrated in the brief that Mr. Short was ready, willing, and able to close on December 2nd, but what the trial court is saying is he's excused from performing on the 2nd, so we have to look at whether he was ready, willing, and able to perform within a reasonable time thereafter. I think it's quite clear that he was ready, willing, and able to perform on the 2nd, and therefore, was ready, willing, and able to perform shortly thereafter. So the equitable principle here is can Hankins know that it's not going to close, even though he still admittedly wants to sell the property on December 2nd and sometime thereafter, but say nothing? So I don't think that there's any scenario where that's OK. And then to say, well, OK, I've had a change of heart eight days after the sale, maybe because my son is encouraging me to, so I'm going to go back to the problem I should have raised November 14th and say you should have closed on December 2nd. That's clearly inequitable, and I think the trial court reached the right conclusion. Perhaps for the right principles espoused by Omni, but certainly by the principles of estoppel by silence or waiver. If you read it, the trial court seemed to focus on the fact that waiver was not proved based on the similarity of the facts in Omni, but if you look at the case I just cited to you and the cases it cites, waiver can be established a lot easier than what the facts of Omni reviewed and established a waiver for. So I think I would ask the court to affirm the judgment of the trial court, and unless there are any other questions, I'll turn it over to the co-counsel. Thank you, Mr. Elwood. Mr. Elwood? Thank you. Brad Elwood on behalf of Jim Alou. Our argument in this case, obviously we adopted the points made by my co-counsel. We're asking that the judgment below be affirmed. The focus of what we're arguing here today is the enforcement of the sales commission aspect for the sale of the property. As a finer fact in this case, the court found that there was an enforceable contract, that there was a breach of that contract by Hankins, and it also found that Short was ready, willing, and able to buy the property on or about the closing time. Now, when you look at paragraph C and D of the listing agreement, both of those findings support affirming the decision of the trial court here. Paragraph C talks about a fully executed contract for sale where the seller defaults. If you adopt the arguments that my co-counsel has made, you see clearly that the breach here was by Mr. Hankins, so there would be recovery of the sales commission under section C, paragraph C. If you focus on the aspect of paragraph D, which asks, was the buyer of the property ready, willing, and able, the answer to that is yes, and that brings us within that aspect of it as well. The thing I think is interesting here is that the question of whether or not a buyer was ready, willing, and able to purchase the property is a fact question. And I would say to this court, what did you read in the briefs that would show that an opposite result is clearly apparent? What did you hear from opposing counsel that would suggest that an opposite result to that conclusion is clearly apparent? The answer is nothing. And so if you focus on paragraph D, we've clearly got a finding by the fact finder in this case that Mr. Short was ready, willing, and able. And if that's the case... As for the extension saying the best way for me to get financing requires that we go beyond the second, but if I can't get the extension, I can, you know, mortgage on his home or something. Right. It wasn't a matter of the financing overall was delayed, but the best manner would be to ask for the extension instead. Right. And I think it's important to look at the arguments that were made below about whether or not he was ready, willing, and able to buy this property. Well, those are the typical arguments that we make. Well, Your Honor, you could look at this, and you could draw this inference, and we think that you should draw this inference from this particular piece of evidence. Maybe he couldn't have accessed this 401k as quick as he thinks he is. All those arguments that were made and vetted by the trier of fact, and after the vetting, the conclusion was Mr. Short was ready, willing, and able to buy. And so any contention, well, we have to wonder whether he could get at that 401k as quick as he thinks he could. Those are just considerations for the trier of fact, and those were considered and findings were made. So the best way is the evidence review. Yes. I think that that really resolves this issue. And I would point out this, you know, when we look at this case, I think we have to apply some common sense and say, how would I behave if I had a closing coming up? Would I show up for the closing? Would I not cancel my appointments as a doctor for that morning to make sure I was available? Would I not contact the other realtor and say, hey, I'm ready to close today. Where are you at? We're ready to go. The 55-gallon drums that you pointed out, it all shows actions which show an understanding that Mr. Hankins must have known that this closing was going to get moved. And counsel has touched upon that a little bit. You know, one of the comments is, is silence enough? And I think here we have the email, but we also have the actions of Mr. Hankins that show he had no intention of showing up for a closing. He must not have believed that there was going to be one. Otherwise, we would have had some evidence in this case that said, I was ready. I was at the lawyer's office. I was ready to sign the papers. We sent you the papers. You didn't get back to us. You didn't show up. We moved our barrels. We were ready to go. We don't have any of that until later when the son, who obviously has some interest in this case as the owner of the property next to this property that was sold, says, hey, wait a minute. I found out what Dad did. I'm not sure Dad knew what he was doing or was clear on what he was doing. And by the way, the closing date was a couple weeks ago. We think that that's a point. I think sometimes we have to ask common sense. We stand back and we look and say, what really happened here? I think what really happened here is that there was some type of agreement for an extension. Everybody was operating on that. Hankins would have showed up if that wasn't the case. Second, I think the son looked at this and said, I don't want Dad to sell this property. I'm the power of attorney. I'm going to intervene. We're going to make this deal go away. Well, that's a breach. And it's a breach with a ready and willing and able purchaser. And under both of those provisions and both of those findings of our contract, we prevail on the attorney's visa, or excuse me, on the commission aspect. So for those reasons, we're asking you to affirm with respect to no liberality. Thank you. Thank you. Mr. Abbott? We have the statute of frauds for reasons. And the best reason might be that we wouldn't end up in the appellate court on situations like this. The statute of frauds says if it deals with real estate, it must be in writing, including modifications. That's the purpose of the statute of frauds is to prevent litigation with regard to important matters like this. I don't believe that any of the evidence or the court's holdings below really justify getting around the statute of frauds argument. There's no affirmative duty, whether it's free-floating under Omni or, for the reasons I've stated under the contract, if you interpret the contract, paragraphs 5 and 13, as I do, for my client to do anything in response to his knowledge that an extension is requested. The cases say if you have a duty, silence can be a waiver in circumstances when there's an affirmative duty and an opportunity to speak. Nothing my client did other than silence here created the duty for him to do anything, and his mere silence is just not enough to constitute estoppel or waiver. He has to intentionally relinquish a known right. He did not do that. And in terms of whether Mr. Short was ready, willing, and able to perform on the second, I think Mr. Umlund's wonderful accounting in his brief shows that even if, first of all, there's not enough evidence in court for him to say, well, I could have cashed my 401k by that date, the contract could have, by December 2nd, the contract could have been all drawn up by December 2nd, whether there's no testimony from him that he would incur an additional $72,000 in taxes by cashing in his 401k, as stated in Mr. Umlund's brief, that he would have done that. There's just not evidence in the record to show that he could have closed on the second. And I believe the court found that Mr. Short was ready, willing, and able within a reasonable time of December 2nd to pay the contract price. And in terms of the contract provisions for the listing agreement, really the only one that applies is if the seller defaults. And not that the other provision says they're entitled to a commission if my client, the seller, refuses a ready, willing, and able buyer, which he didn't refuse to contract with that person. So I think that's paragraph D of that contract. So in terms of the commission, if Dr. Hankins did not waive his right to insist on the second, then Mr. Short was in default on December 2nd. And therefore, no commission is entitled to be paid under the listing contract. Again, we have the statute of frauds, there's a reason for that. Nothing in my client's behavior supports a waiver. Silence alone does not constitute a waiver in the absence of creating the duty by your other conduct to do more than just not say anything. So we would request that the court reverse the child court's ruling and reverse the award of specific performance and the award of attorney's fees and commissions in this case. Thank you all for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. And right now we'll take a short recess for panel change.